**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JUNE S.,

                          Plaintiff,

       - v -                                             Civ. No. 5:17-CV-669
                                                                   (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

**APPEARANCES:**                                 **OF COUNSEL:**

LAW OFFICES OF STEVEN R. DOLSON       STEVEN R. DOLSON, ESQ.
Attorney for Plaintiff
126 North Salina Street
Suite 3B
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION        VERNON NORWOOD, ESQ.
Office of Regional General Counsel            Special Assistant U.S. Attorney
Attorney for Defendant
26 Federal Plaza
Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM-DECISION and ORDER[1]

      In this action, Plaintiff June S. moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Presently pending

---

[1] Upon Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

are Plaintiff's and Defendant's Motions for Judgment on the Pleadings pursuant to this Court's General Order 18. Dkt. Nos. 10 & 12. Based upon the following discussion, Plaintiff's Motion for Judgment on the Pleadings is **granted** and the case is ordered remanded to the Commissioner for further proceedings. Defendant's Motion for Judgment on the Pleadings is **denied**.

## I. BACKGROUND

Plaintiff was born on February 22, 1952. Dkt. No. 9, Admin. Tr. [hereinafter "Tr."] at p. 268. She filed an application for DIB on March 6, 2011and for SSI on April 1, 2011. Tr. at p. 268-80. These applications alleged a disability onset date of June 11, 2010. Tr. at p. 268. The basis for the claimed disability was fibromyalgia, bipolar disorder, depression, chronic pain, and fatigue. Tr. at p. 272. Plaintiff has a high school education and past work experience as typist/administrative assistant. Tr. at pp. 23 & 298. Plaintiff's applications were denied on initial review. Tr. at pp. 60, 64, & 67. On August 30, 2013, a Hearing was held before an Administrative Law Judge ("ALJ") and a decision was issued. Tr. at pp. 37-47. Upon appeal, the Social Security Administration's Appeals Council remanded the matter for further proceedings before the ALJ. Tr. at pp. 53-55. Plaintiff appeared for a second administrative hearing at which she and a vocational expert testified. Tr. at pp. 640-64. On August 18, 2015, ALJ John P. Ramos issued an unfavorable decision finding Plaintiff not disabled. Tr. at pp. 15-25. On May 10, 2017, the Appeals Council concluded there was no basis to review the ALJ's decision, thus rendering the ALJ's decision the final determination

of the Commissioner. Tr. at pp. 8–10. This action followed.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an [Administrative Law Judge's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The Administrative Law Judge must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject

its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe

impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[2] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that

---

[2] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a).

the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Ramos' Findings

Using the five-step disability evaluation, ALJ Ramos found that: (1) Plaintiff had not engaged in any substantial gainful activity since June 11, 2010, the alleged onset disability date; (2) she has severe medically determinable physical and mental impairments including fibromyalgia, degenerative disc disease, right knee degenerative joint disease, obesity, emphysema, chronic sinusitis, bipolar disorder, major depressive order, generalized anxiety disorder, personality disorder, and alcohol abuse; (3) her severe physical and mental impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulations; (4) she retains the RFC to perform light work subject to certain limitations and restrictions, and could not return to her prior work; (5) Plaintiff is an individual closely approaching retirement age; and (6) considering her age, education, work experience, RFC, and the VE testimony, Plaintiff could perform work available in the national economy and was therefore not disabled. Tr. at pp. 17-25.

### D. Contentions of the Parties

Plaintiff contends that the ALJ committed reversible error with regard to two distinct matters. First, Plaintiff asserts that the ALJ erred in finding that she had transferable skills. Dkt. No. 10, Plaintiff's Memorandum of Law ("Pl.'s Brief") at pp. 5-10. Second, Plaintiff contends that the ALJ misapplied the treating physician rule in failing to accord sufficient weight to her treating doctor's opinion. *Id.* at pp. 10-14. Defendant asserts that the ALJ's decision regarding Plaintiff's RFC is supported by substantial evidence. Dkt. No. 12, Defendant's Memorandum of Law ("Def.'s Brief ") at pp. 13-16. Defendant also contends that the determination that Plaintiff's RFC permits her to perform work that exists in significant numbers in the national economy is supported by substantial evidence. *Id.* at pp. 16-21.

### E. Analysis

*1. The ALJ's Weighing of the Opinions from Plaintiff's Treating Physician*

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999). However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 416.927(e)(1) (Commissioner provides

the ultimate decision on disability). The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 416.927(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). "In order to override the opinion of the treating physician . . . the ALJ must explicitly consider, *inter alia*: (1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so. 20 C.F.R. § 416.927(d)(2).

In this case, Plaintiff contends that remand is required because the ALJ failed to explicitly consider the four relevant treating physician factors in deciding not to give Dr. LaManna's opinion controlling weight. Pl.'s Brief, pp. 12-14. A review of the record establishes no error on the ALJ's part in this regard.

There is no question that the ALJ specifically addressed a number of the relevant factors under the treating physician rule. The regulations require consideration of the supportability and consistency of the opinion in light of the other medical evidence in the record. 20 C.F.R. §§ 404.1527(c)(3)-(4) & 416.927(c)(3)-(4). In his opinion, the ALJ noted "the absence of objective medical support" for a number of Dr. LaManna's opinions. Tr. at p. 22. The ALJ also specifically made note of inconsistencies between Dr. LaManna's own opinions offered in 2013 and 2014. Tr. at p. 22 (referring to the two assessments as "markedly inconsistent"). This alone is sufficient to satisfy the ALJ's obligation to specifically address these factors. Under the controlling regulations, the ALJ should also consider whether the treating physician is a specialist. 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5). The ALJ considered this factor and explicitly noted that Dr. LaManna was not a specialist. Tr. at p. 22.

The other relevant factors under the treating physician rule are the frequency, length, nature, and extent of treatment. 20 C.F.R. §§ 404.1527(c)(1)-(2) & 416.927(c)(1)-(2). The ALJ made less direct reference to these factors in his decision, but Plaintiff fails to show that this amounted to an error warranting remand. The nature of Dr. LaManna's treatment relationship was clear to the ALJ whose decision noted that she was Plaintiff's "primary care provider." Tr. at p. 19. The ALJ's decision repeatedly cited to the over three years of medical records from Dr. LaManna which clearly show the frequency and length of Plaintiff's treatment with her. Tr. at pp. 19-22. This was more than sufficient to establish

the necessary consideration of this factor. "Where an ALJ's reasoning and adherence to the Regulations is clear, []he is not required to explicitly go through each and every factor of the Regulation." *Smith v. Comm'r of Soc. Sec.*, 2018 WL 1684337, at *5 (N.D.N.Y. Apr. 5, 2018) (citations omitted); *see also Shaffer o/b/o Z.L.S.R. v. Colvin*, 2016 WL 8469638, at *3 (N.D.N.Y. Sept. 29, 2016) (citing cases) (Courts have recognized that "the Second Circuit has indicated that it does not require 'recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear" and "that there may be circumstances when the ALJ's failure to apply the treating source rule properly may be harmless error.")

To the extent Plaintiff's argument is that the ALJ erred in how he evaluated the supportability and consistency of Dr. LaManna's opinions, *see* Pl.'s Brief, p. 14, that argument is also rejected. First, Plaintiff does not dispute, indeed she affirmatively acknowledges, that the different assessments from Dr. LaManna are inconsistent with each other and "are inconsistent with other opinions of record." Pl.'s Brief at p. 12. Beyond these concessions, this argument must be viewed in accord with the significant deference an ALJ receives in weighing medical opinions. "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Plaintiff nonetheless argues that it was error not to afford Dr. LaManna's opinions greater weight because "portions" of those opinions are uncontroverted by any other medical evidence in the record. Pl.'s Brief at p. 14. She points in particular to Dr. LaManna's opinion regarding the amount of time Plaintiff would be off task and her expected absentee

rate. *Id.* Apart from Dr. LaManna's own inconsistencies, other evidence in the record does controvert the opinion that Plaintiff would be unable to stay on task. Dr. Kleinerman, a State psychological consultant, specifically stated that Plaintiff was "not significantly limited" in her ability to "maintain regular attendance" and "sustain an ordinary routine without special supervision." Tr. at p. 481. Plaintiff's contention that Dr. LaManna's opinion in this regard is uncontroverted is simply not true as a matter of fact. The ALJ chose to give Dr. Kleinerman's opinion some weight given its consistency with other opinions in the record. This was clearly acceptable. *Camarata v. Colvin*, 2015 WL 4598811, at *11 (N.D.N.Y. July 29, 2015); *see also Biengardo v. Astrue*, 2010 WL 2134316, at *6 (N.D.N.Y. May 26, 2010) ("It is well-settled that the opinions of a State agency examining physician or psychologist may constitute substantial evidence in a claim for SSI and/or DIB").

Plaintiff is correct that in *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) the Court recognized that "[t]he failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." This is not a case, however, either where the treating physician's opinion was totally disregarded (it was just given less weight), or where the ALJ failed to explain his reasons for those actions. Instead, the ALJ clearly relied on the now acknowledged inconsistency and lack of objective support for some of Dr. LaManna's opinions, *see* Tr. at p. 22, which clearly provided sufficient reason to accord the opinions less weight.

## *2. The ALJ's Assessment of Plaintiff's RFC and Transferable Skills*

The ALJ found that Plaintiff's RFC permitted work that, when assessed in light of skills learned from prior work, allowed Plaintiff to perform jobs that exist in significant numbers in the national economy. Tr. at pp. 24-25. Here, Plaintiff alleges several errors. First, Plaintiff claims that the identified skills are merely aptitudes or traits, not skills learned on the job. Pl.'s Brief at pp. 6-8. Second, she argues that the ALJ's determination is inherently inconsistent because the stated RFC would preclude the performance of certain work that the ALJ apparently found Plaintiff could perform. *Id.* at pp. 8-10. Having reviewed the ALJ's decision, the Court concludes that the ALJ did not make the specific findings required or sufficiently explain the basis for his decision and that remand is required.

In reaching his conclusions regarding Plaintiff's ability to perform work, the ALJ relied largely on the testimony of a vocational expert ("VE"). The VE expert testified that Plaintiff's skills from her past work as a secretary included active listening, coordination, reading comprehension, writing, information organizing, speaking, service orientation, social perceptiveness and time management. Tr. at p. 659. He further testified that these skills were transferrable to other occupations in the national economy and that Plaintiff would not need to make any vocational adjustments in those occupations. Tr. at pp. 659-60. The ALJ subsequently adopted that testimony in his decision. Tr. at pp. 24-25. While an ALJ may rely on a VE's testimony on such matters, the ALJ must be certain to properly evaluate that

testimony and fully document his analysis and reasoning. *Clark v. Berryhill*, 697 Fed. Appx. 49, 50 (2d Cir. 2017). The ALJ's decision falls short in this regard in at least two ways.

In the Social Security context a skill has been defined as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." *Draegert v. Barnhart*, 311 F.3d 468, 473 (2d Cir. 2002) (quoting SSR 82–41, Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations ("SSR 82–41"), 1982 WL 31389, at *1). The Second Circuit recognizes the difference between a skill and an aptitude - "an aptitude is an inclination, a natural ability, talent, or capacity for learning. A skill is a learned power for doing something competently." *Id*. at p. 475 (quoting *Weaver v. Secretary of Health and Human Servs.*, 722 F.2d 310, 311-12 (6th Cir. 1983)) (internal quotations and citations omitted).

*Draegert* discussed at length the difference between skills acquired on a job and more broadly stated traits or aptitudes. 311 F.3d at 473-76. The Court cautioned that while certain general characteristics might be called skills, such "abilities, when not linked to any particular tasks, are merely traits or aptitudes, not job skills." *Id*. at 476. In *Draegert*, the Court concluded that because neither the VE nor the ALJ "gave any explanation as to how these abilities and aptitudes had been used in connection with Draegert's prior work or had been refined by occupational experience into an acquired work skill" remand was required. *Id*. Moreover, the Second Circuit has made clear that

> when a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision. Thus, Social Security Ruling 82-41 requires specific findings by the ALJ on the transferability of vocational skills.

*Clark v. Berryhill*, 697 Fed. Appx. at 50 (internal citations and quotations omitted). The record here fails to demonstrate the specific explanatory connection between Plaintiff's acquisition of those skills in her prior work and how those skills would relate to future work that *Clark* and *Draegert* require.

The VE's testimony makes clear that the identified set of skills was taken from a standardized list on O*NET, not based on any individualized assessment of Plaintiff's past work. *See* Tr. at p. 659. While reliance on such a resource is not inappropriate, here it is problematic because there was no further explanation of how it was determined that these were skills Plaintiff had indeed acquired during her prior work. In fact, the VE did not even appear certain that the secretary classification from which these skills were drawn was correct one for Plaintiff. He testified, "I'm going to go with classifying it as a secretary, because I think there's a bit more involved than what there would be a for a clerk typist position." Tr. at p. 656. He did so after asking for additional information about Plaintiff's work and learning that her title had been a typist. Tr. at p. 654. As in *Draegert*, the record fails to establish that the particular abilities identified by the VE were actual on the job learned skills of Plaintiff. "Neither the VE nor the ALJ made any effort to link these 'skills' to any actual work activity that Plaintiff performed." *Woods v. Colvin*, 218 F. Supp.2d 204,

211 (2016). There was no testimony, for example, about what type of coordination or information organizing Plaintiff performed or how she engaged in time management in the position. This failure warrants remand. *Id.* Given the generalized nature of the "skills" identified, such testimony (or at least expert explanation from the VE) was critically important to establish that these were actual skills, not just general traits. *See Castle v. Colvin*, 2017 WL 3939362, at *5 (W.D.N.Y. Sept. 8, 2017) (identifying "writing" as something that is not a transferable skill and remanding, in part, based on failure of VE to adequately explain transferability of skills conclusion); *Buchanan v. Barnhart*, 2010 WL 1268029, at *7 (N.D.N.Y. Mar. 17, 2010), *report and recommendation adopted sub nom. Buchanan v. Comm'r of Soc. Sec.*, 2010 WL 1268137 (N.D.N.Y. Mar. 31, 2010) (ordering remand for ALJ to make explicit findings as to whether coordination was a skill or aptitude).

The ALJ's decision also fails to satisfy the requirement that there be "specific findings by the ALJ on the transferability of vocational skills." *Clark v. Berryhill*, 697 Fed. Appx. at 50. The only direct testimony on the transferability of these skills to new employment was when the VE answered "Yes" to a question from the ALJ about whether the skills would apply to all the jobs identified by the VE. Tr. at p. 660. There was no explanation by the VE as to "why [those skills] were transferable to those identified jobs." *Clark v. Berryhill*, 697 Fed. Appx. at 51. This alone is a basis for remanding the case.

Here, that failure is particularly problematic because it raises questions about whether the transferability of skills regulation was properly applied. The VE, and in turn, the ALJ

identified three potential jobs that Plaintiff might be able to hold: nonemergency dispatcher (classified as sedentary work with a specific vocational preparation ("SVP") level of 3; document preparer (sedentary work with an SVP of 2); and office helper (light work with an SVP of 2). Tr. at p. 24. "Using the skill level definition in 20 C.F.R. § 1568(a), the Social Security Administration has determined 'unskilled' work corresponds to an SVP of 1 or 2." *Polynice v. Colvin*, 2013 WL 6086650, at *17 (N.D.N.Y. Nov. 19, 2013), *aff'd*, 576 Fed. Appx. 28 (2d Cir. 2014). Thus, two of the three positions for which the VE found Plaintiff had transferable skills were in fact unskilled work. Under the applicable regulations for evaluating transferability of skills for someone like Plaintiff, who is nearing retirement age, the Commissioner "will find that you have skills that are transferable to skilled or semiskilled light work" only under certain situations. 20 C.F.R. § 416.968(d)(4). The Social Security Administration recognizes that "an individual cannot transfer skills to unskilled work." SSR 00-4p (available at https://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html); see also *Hulbert v. Comm'r of Soc. Sec.*, 2009 WL 2823739, at *19 (N.D.N.Y. Aug. 31, 2009) (the Commissioner of Social Security conceded "that a claimant cannot transfer skills to unskilled work . . . and that the ALJ erred in finding that those jobs constituted other work that plaintiff could perform.") It also imposes upon its ALJs "an affirmative responsibility" to address potential conflicts in a VE's testimony. SSR 00-4p. The VE specifically testified that the SVP level 2 jobs were unskilled, Tr. at p. 660, but offered no explanation as to why he had testified regarding skills that could be transferred to those positions. While the ALJ

did ask the VE whether this testimony was consistent with the Dictionary of Occupational Titles, he received an entirely conclusory affirmative answer with no explanation. Tr. at p. 663. The ALJ sought no clarification regarding this potential anomaly. In his decision he then stated that the VE "testified that each of these jobs would require the skills the claimant acquired from her past relevant work," Tr. at p. 24, while at the same time recognizing that only one of the three positions identified involved semi-skilled work. *Id.*

Taken together, the ALJ's failure to provide the specific transferability analysis required by *Clark* and *Draegert* and the vague and somewhat inconsistent testimony of the VE raises questions about the propriety of the analysis under section 416.968 and warrants remand. *See Nobile v. Comm'r of Soc. Sec.*, 2017 WL 3054846, at *5-6 (N.D.N.Y. July 19, 2017); *Brown v. Colvin*, 146 F. Supp. 3d 489, 495 (W.D.N.Y. 2015)

Accordingly, while there was no error regarding the ALJ's application of the treating physician rule, remand is warranted to address what skills Plaintiff acquired during her past relevant work and the extent to which those skills are transferable to other employment.

### III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff benefits be **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties.

Dated: July 27, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge